IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| WALLY ELBECK and ARKANSAS MUNICIPAL WASTE TO ENERGY, INC., and MEDICAL WASTE MANAGEMENT, INC., | * * * * * |
| Plaintiffs, | * * |
| vs. | * No. 3:02CV00334 SWW * |
| DICKIE KENNEMORE and THE CITY OF OSCEOLA, | * * * * |
| Defendants. | * |

**Memorandum Opinion and Order**

Plaintiffs Wally Elbeck ("Elbeck"), Arkansas Municipal Waste to Energy, Inc. ("AMWE"), and Medical Waste Management, Inc. ("MWM") filed this action alleging defendants Dickie Kennemore, the Mayor of Osceola, Arkansas ("the Mayor") and the City of Osceola ("the City") violated the Racketeering Influenced Corrupt Organizations Act ("RICO"), 15 U.S.C. § 1961 *et seq.* and violated their constitutional rights pursuant to 42 U.S.C. § 1983. They also assert state law claims of tortious interference with a contract, abuse of process, civil conspiracy, breach of contract, and conversion. Now before the Court is defendants' motion for summary judgment to which plaintiffs have responded. For the reasons stated below, the Court finds the motion should be granted.

**Background**

According to plaintiffs, a few years prior to filing their complaint, Elbeck entered into a contract with the City to lease an incinerator from the City for the purpose of burning waste. At that time, there had been a fire at the incinerator facility and the City was looking for some person or

entity with knowledge and experience to run its facility. In April 2001, another fire occurred at the incinerator facility and totally destroyed the premises. After that fire, the City again contacted Elbeck about leasing the facility which was to be rebuilt. According to plaintiffs, the City also sought out Elbeck to serve as a consultant in its efforts to rebuild the facility. The City, Elbeck, and AMWE executed a lease sometime in late May or early June 2001. Pursuant to the terms of the agreement, the City would continue to lease the incinerator facility to AMWE as had been done previously. Payments were not to begin until the facility was rebuilt.

During the rebuilding process, the Arkansas Department of Environmental Quality ("ADEQ") shut down the construction of the incinerator and cited the City for violations of state and federal laws. In December 2001, the City and the ADEQ entered into a consent order by which the City agreed to pay a $30,000.00 civil penalty and put up a $100,000.00 irrevocable standby letter of credit with ADEQ as the beneficiary in the event of future violations. The facility was completed in May 2002, and AMWE made its first rent payment to the City in June 2002.

According to plaintiffs, the costs associated with rebuilding the facility were considerably more than what the City had anticipated, and considerably more than what the fire insurance company had represented would be covered under the loss according to their policy. In addition, plaintiffs claim that James Kennemore, brother of the Mayor, had two companies providing services to the City in the rebuilding of the incinerator, and was owed a considerable amount of money. Plaintiffs allege that because of cost overruns and the penalty imposed by the ADEQ, the Mayor and the City turned on plaintiffs in an attempt to get the facility back from plaintiffs in order for the City to operate it or to negotiate a more favorable lease with another company.

Plaintiffs allege defendants embarked on a course to ruin them. Plaintiffs claim the Mayor threatened to shut them down and run them out of town if they did not pay the alleged shortfall between the costs of rebuilding the incinerator and the insurance proceeds; threatened to cancel their lease if they did not pay the Mayor's brother; accused plaintiffs of being in breach of their lease; placed a City employee in an office in the administration building of the incinerator in order to intimidate plaintiffs; harassed plaintiffs in their business; threatened to call the ADEQ to bring down plaintiffs; called agencies such as the ADEQ with the intent of causing harm to plaintiffs' business reputation; spread false and malicious rumors about plaintiffs in order to ruin them and their business; and converted plaintiffs' personal property. Compl. at ¶ 17(a)-(d).

Plaintiffs also allege the Mayor uses the police force of the City as his own stormtroopers or armed guards to shake down and harass plaintiffs as well as other citizens of Osceola. They assert the Mayor sent the police to the incinerator facility under the guise of investigating alleged thefts and other activities, used the police to hand deliver mail to plaintiff even though the City has a reputable mail service, and had an alleged compliance officer in an office at the incinerator facility. Plaintiffs complain police officers stop drivers employed by plaintiffs for no reason, assist the Mayor in converting personal property belonging to plaintiffs, and stop without cause employees of plaintiffs whose relatives are supporting the Mayor's opponent in the mayoral election.
Compl. at ¶ 17(e).

In September 2002, the City filed a lawsuit in state court against Elbeck and AMWE for unlawful detainer and breach of contract. Plaintiffs Elbeck and AMWE filed an answer to that complaint on September 25, 2002. Then, on October 10, 2002, Elbeck, AMWE, and MWM filed the complaint now before this court.

3

In their motion for summary judgment, defendants argue plaintiffs' claims are procedurally barred as a result of the earlier state court lawsuit. In the alternative, defendants argue the claims should be dismissed on the merits. In addition, defendants assert plaintiffs' recovery is limited by Elbeck's bankruptcy exemption, the Mayor is entitled to qualified immunity, there is no municipal liability, and plaintiffs are not entitled to relief on their state law claims.

**Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* At 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Further,

4

summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995).

## Discussion

Defendants assert the Court should dismiss plaintiffs' complaint in its entirety because they should have raised their claims by filing a counterclaim in the state court lawsuit. In addition, they argue plaintiffs' claims are barred by the doctrine of res judicata/collateral estoppel.[1] Defendants also argue plaintiffs' complaint should be dismissed on the merits.

### A. Compulsory Counterclaims

Arkansas Rule of Civil Procedure 13(a) provides:

> A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

The purpose of this rule is to require parties to present all existing claims simultaneously to the court or be forever barred, thus preventing a multiplicity of suits arising from one set of circumstances. *See Linn v. NationsBank,* 14 S.W.3d 500 (Ark. 2000). The City sued AMWE and Elbeck in state court alleging unlawful detainer and breach of contract in connection with their incinerator facility lease agreement. Defendants assert plaintiffs' claims all arise directly from the leasing agreement between the parties and, therefore, are compulsory counterclaims.

---

[1]Section 522 of the Bankruptcy Code allows a debtor to exempt an interest in property from the bankruptcy estate, up to a specified dollar limit. 11 U.S.C. § 522(d)(5). The Court agrees that if this case were to go to trial, plaintiff's recovery would be limited to his remaining exemption amount. *See In re Wick,* 276 F.3d 412 (8th Cir. 2002)(listing value of an asset as "unknown" does not render it fully exempt). The Court agrees with plaintiffs that the bankruptcy exemption does not affect their rights to recover on their claims.

The Court finds plaintiffs' claims do not arise out of the same occurrence or transaction, i.e. the lease agreement. Plaintiffs' claims raise different issues of fact and law than the state case, the evidence to support the parties' claims would not be substantially the same, and plaintiffs' claims here are not logically related to the City's state court claims. *Compare First Nat'l Bank of DeWitt v. Cruthis,* 100 S.W.2d 703 (Ark. 2003) (logical relationship existed between creditor's financing and liquidation of debtors' farming operation and debtors' and creditors' subsequent claims of conversion, fraud, tortious interference with a contract, breach of fiduciary duty, slander and defamation, and recovery of lost property); *Pentz v. Romine,* 57 S.W.3d 235 (Ark. App. 2001) (breach of contract claim a compulsory counterclaim to foreclosure action as both arise from alleged breach of same sales contract); *Linn, supra. (*borrowers' claims of breach of contract, fraudulent misrepresentation, and breach of good faith arose directly from financing transactions for construction loans and thus were compulsory counterclaims in the lender's foreclosure suit arising from borrowers' discontinuance of interest payments on loans).

**B. Res Judicata**

Defendants argue that even if the Court were to find that plaintiffs' claims are not counterclaims to the state lawsuit, their breach of contract and conversion claims are barred by the doctrine of res judicata.

The concept of res judicata has two facets: issue preclusion and claim preclusion. *Linn, supra,* 14 S.W.3d at 503. Issue preclusion precludes additional litigation of a certain issue and "is limited to those matters previously at issue, which were directly and necessarily litigated." *Id.* Claim preclusion, on the other hand, forecloses both those issues that were litigated in the first suit and those that could have been litigated but were not. *Id.* Claim preclusion bars relitigation

in a subsequent suit when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involved the same claim or causes of action; and (5) both suits involved the same parties or their privies." *Pentz, supra,* at 239-40. One of the main purposes of the doctrine of res judicata is to put an end to litigation by precluding a party who has had the opportunity for one fair trial from drawing the same controversy into issue a second time before the same or different court. *Bankston v. McKenzie,* 702 S.W.2d 14 (Ark. 1986). "The cases dealing with the issue of res judicata do not draw a distinct line beyond which the principle of res judicata invariably applies and where it does not; the very nature of litigation makes that impossible." *Lawyers Sur. Co. v. Cagle,* 898 S.W.2d 476, 478 (Ark.App.1995). Defendants argue that the breach of contract and conversion claims are barred by both issue and claim preclusion.

On February 24, 2003, the state court granted the City partial summary judgment against Elbeck and AMWE, finding they were in default of the lease agreement because they failed to make their November 2002 rental payment. The Court also granted possession of the incinerator facility to the City and ordered the sheriff to remove Elbeck and AMWE from the incinerator facility. The court stayed implementation of its ruling pending appeal. On March 31, 2005, the court granted the City's motion for non-suit and dismissed the case.

Plaintiffs seek a declaratory judgment to establish the rights of the parties under the lease agreement, which they claim has been modified many times by the parties. Specifically, they seek a declaration of their rights as they relate to cost overruns resulting from the rebuilding of the incinerator after the fire in April 2001, whether a storage or warehouse building was to be included in the leased property, and payment for charges incurred by plaintiffs for re-routing some

7

waste of the City after the fire in 2001. In their conversion claim, plaintiffs assert defendants converted three or four trailers and over 100 containers which are owned by plaintiffs.

Other than plaintiffs' failure to pay the November 2002 rental payment, it does not appear the state court adjudicated any other issues before the case was non-suited. Further, while the City obtained a judgment on its motion for partial summary judgment,[2] the Court cannot find that the first suit resulted in a final judgment on the merits or that it was fully contested in good faith. Therefore, the Court finds plaintiffs' claims are not barred by the doctrine of res judicata.

**C. RICO Claims**

"A plaintiff who brings suit under 18 U.S.C. § 1962(c) must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Handeen v. Lemarie,* 112 F.3d 1339, 1347 (8th Cir. 1997). In addition, in order to have standing to bring a civil RICO claim,

> a plaintiff must have suffered injury 'by reason of' a RICO violation. 18 U.S.C. § 1964(c)('Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee . . .'). The phrase 'by reason of' as used in § 1964(c) means causation under the traditional tort 'requirements of proximate of legal causation, as opposed to mere factual or 'but for' causation.' Further, 'a showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest.'

*Regions Bank v. J.R. Oil Co.,* 387 F.3d 721, 728 (8th Cir. 2004).

---

[2]The City filed the lawsuit in state court on September 19, 2002. The order and judgment entered in February 2003 found Elbeck and AMWE failed to make their November 2002 rent payment.

As to the first factor, conduct, the courts have held that "[l]iability under § 1962(c) extends only to those persons associated with or employed by an enterprise who 'conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Handeen, supra,* at 1347. "Congress did not mean for § 1962(c) to penalize all who are employed by or associated with a RICO enterprise, but only those who, by virtue of their association or employment, play a part in directing the enterprise's affairs." *Id.* at 1348. As to the "enterprise" element,

> [t]he Supreme Court has remarked that '[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.' Consequently, '[t]he existence of an enterprise at all times remains a separate element which must be proved by the [plaintiff].' . . .[W]e have identified three characteristics possessed by all RICO enterprises: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering.

*Id.* at 1351. "'Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." *Id.*

The third element, "pattern", "is present when predicate acts are linked by 'continuity plus relationship.' Prohibited activities are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 1353.

> The 'pattern' element requires the RICO plaintiff to allege facts demonstrating the defendant has engaged in at least two or more acts of racketeering activity. 18 U.S.C. § 1961(5); *see also United States v. Bennett,* 44 F.3d 1364, 1372 (8th Cir.1995)(establishing liability under § 1962(c) requires proof that defendant engaged in two acts of racketeering). A defendant cannot be liable under RICO

9

> unless he participated in two or more predicate offenses. *DeFalco v. Bernas,* 244
> F.3d 286, 315 n. 19 (2d Cir.2001). While the statute requires at least two acts to
> establish a pattern, this is only a minimum requirement. A pattern is shown by facts
> demonstrating that "the racketeering predicates are related, *and* that they amount to
> or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel.
> Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)(emphasis
> in original). Prohibited activities are related if they "have the same or similar
> purposes, results, participants, victims, or methods of commission, or otherwise are
> interrelated by distinguishing characteristics and are not isolated events." *Id.* at
> 240, 109 S.Ct. at 2901 (quotation omitted). Continuity may be demonstrated in two
> ways: (1) by facts showing "a series of related predicates extending over a
> substantial period of time" (closed-ended continuity); or (2) by facts showing that
> the predicate acts are part of an ongoing entity's regular way of doing business and
> "involve a distinct threat of long-term racketeering activity..." (open-ended
> continuity). *Id.* at 242, 109 S.Ct. at 2902.

*Pennino v. Selig,* 258 F.Supp.2d 914, 924 -925 (W.D.Ark. 2003).

Lastly, "racketeering activity" is defined in 18 U.S.C. § 1961(1), which lists as predicate acts certain state law crimes, conduct that is "indictable" under various federal provisions, and numerous other "offenses."

In his affidavit in support of his response to the motion for summary judgment, Elbeck repeats the allegations contained in his complaint: (a) the Mayor repeatedly threatened to "shut down" and "run [plaintiffs] out of town" if they did not pay the alleged shortfall between the cost of rebuilding the incinerator and the insurance proceeds, and other related costs; (b) the Mayor repeatedly insisted that plaintiffs pay the claims of the Mayor's brother, and if they did not, the lease would be cancelled; (c) the City and the Mayor wrongly accused plaintiffs of being in breach of their contract; (d) the Mayor insisted that the City have a private office at the administration building of the incinerator, supposedly to ensure compliance with state and federal regulations but in fact the intent was to spy on and intimidate plaintiffs; (e) the Mayor used the police force to "shake down" and harass plaintiff in their business and to harass other citizens as well; (f) the

10

Mayor repeatedly called agencies such as the ADEQ, OSHA, and the EPA with the intent of causing harm to plaintiffs' business and reputation; (h) the Mayor intentionally interfered with customers and clients of plaintiffs by spreading rumors such as plaintiffs were in violation of state and federal laws, were in breach of their contract, and were illegally storing waste; (i) the Mayor spread rumors that plaintiffs were in financial difficulty; and (j) the Mayor converted plaintiffs' personal property. *See* Compl. at ¶ 17; Pls.' Resp. Mot. Summ. J., Elbeck Aff. at ¶ 4.

Plaintiffs assert the City is an enterprise as defined by the RICO Act, that the Mayor engaged in and participated in conduct, both directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, and the predicate acts that form the pattern of racketeering activity are mail fraud, wire fraud, and extortion. Defendants contend there is absolutely no evidence that there was any kind of continuity of structure here as required for a RICO claim. In addition, defendants argue plaintiffs have no standing to bring their RICO claims because there is no evidence of a direct relation between the injury asserted and the injurious conduct alleged.

The Court finds plaintiffs have failed to establish a genuine issue of fact exists as to their claim under the RICO Act. There is no evidence to suggest there is an organizational pattern or system of authority that provides a mechanism for directing the enterprise's or City's affairs on a continuing, rather than an ad hoc, basis. Plaintiffs allege that during the latter stages of the construction of the facility defendants changed their attitude and perspective about plaintiffs. The incinerator was completed in May 2002 and in September 2002 the City filed a lawsuit against Elbeck and AMWE. Plaintiffs do not state the date on which defendants allegedly began their threats and committed the predicate acts under RICO. They have presented no evidence that the

alleged pattern of conduct extended over a substantial period of time or that the predicate acts are part of the City's regular way of doing business and involve a distinct threat of long-term racketeering activity. They rely instead on Elbeck's own conclusory, self-serving statements in his affidavit. *See Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 945 (8th Cir.1994) (summary judgment for defendant-employer on plaintiff's claim of racial discrimination affirmed where plaintiff's only evidence to support allegation that he was treated differently from other similarly situated persons was his own unsubstantiated statements in deposition). Further, plaintiffs submit no evidence that the injury to the business was proximately caused by defendants' conduct.

**D. Section 1983 Claims**

Plaintiffs allege the Mayor violated their rights to due process and equal protection under the law. Defendants argue there is no evidence of a substantive due process claim and that plaintiffs cannot prevail on their equal protection and due process claims. In their response to the motion for summary judgment, plaintiffs assert they have a valid due process claim.[3]

"[T]he substantive due process guarantee protects against government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)(citation omitted).

> There are two different ways of stating a substantive due process claim. First, the state violates substantive due process when it infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest. Second, the state violates substantive due process when it engages in

---

[3] As to their equal protection and any procedural due process claim, plaintiffs make no response to defendants' argument that plaintiffs cannot establish that they were treated differently or denied due process when their telephone service was discontinued.

conduct that is so outrageous that it shocks the conscience or otherwise offends 'judicial notions of fairness, [or is] offensive to human dignity.'

*Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998) (citations omitted). "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992).

Plaintiffs allege defendants' alleged conduct is outrageous and offends judicial notions of fairness. Defendants argue plaintiffs have produced no evidence of a substantive due process claim. As with plaintiffs' RICO claims, there is no evidence, other than Elbeck's self-serving statements in his affidavit, that defendants engaged in the alleged unconstitutional conduct. Therefore, the Court finds plaintiffs' have failed to come forward with any evidence from which a jury could find their substantive due process rights were violated.

Plaintiffs allege the City is liable for the unconstitutional actions of the Mayor. Even if the Court were to find the Mayor violated plaintiffs' constitutional rights, the Court finds there is no evidence that the Mayor's alleged actions were undertaken pursuant to some unconstitutional policy or custom of the City.

A city may be held liable only if a municipal policy or custom is the moving force behind a constitutional violation. *Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 694 (1978). Liability may be imposed not only where the challenged conduct executes or implements a formally adopted policy, but also where the conduct reflects practices of government officials "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691. In their

13

complaint, plaintiffs assert the City "maintains in effect official policies that involve harassment and violation of the federal constitutional rights against its citizens. Such policies include the use of the police force as a means of gaining an advantage in civil litigation and disputes." Compl. at ¶ 30. Plaintiffs state in their response that the Mayor "controls the police force, using them as his personal police force, controls the electric service and the water service, has put his family in businesses that provide various services to the city, including construction work, and has abused that position for such a lengthy period of time that it should be obvious that these polices and procedures . . . have become the policies and procedures by . . . which the City of Osceola conducts business." Pls.' Mem. in Supp. Resp. Mot. Summ. J. at 15.

As with their other claims, plaintiffs have no evidence outside Elbeck's conclusory statements in his affidavit that a municipal policy or custom is the moving force behind defendants' alleged unconstitutional conduct.

**E. Qualified Immunity**

Plaintiffs sue the Mayor in his official as well as individual capacity. The Mayor asserts he is in entitled to qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A court required to rule upon the qualified immunity issue must first consider the threshold question of whether, construed in the light most favorable to the party asserting the injury, the facts alleged show the officers' conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified

14

immunity." *Id.* Only if a violation could be made out on a favorable view of the parties' submissions, do we take the next step and ask whether the right was clearly established. *Id.* at 201.

Plaintiffs assert the Mayor violated their rights to due process and equal protection of the laws. As stated earlier, plaintiffs' claim seems to be that the Mayor's alleged activities of intimidation and harassment were so outrageous that they shock the conscience or otherwise offend judicial notions of fairness or are offensive to human dignity. The Court finds plaintiffs' assertions regarding the Mayor's use of the police force fail to establish a violation of their substantive due process rights. Likewise, the Court finds plaintiffs' assertions regarding the Mayor's alleged conduct with regard to the incinerator lease fail to establish a violation of due process.

**E. State Law Claims**

Plaintiffs allege state law claims of conversion, abuse of process, and tortious interference with a business relationship. Defendants argue they are entitled to summary judgment on these claims as well.

As a general rule, the Court exercises its discretion under 28 U.S.C. § 1367 and retains jurisdiction over supplemental state law claims when the federal claims are dismissed. *See* 28 U.S.C § 1367(c). However, in *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims. With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are

15

dismissed on a motion for summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of plaintiffs' state law claims, the language of *Adair* is unequivocal. Accordingly, based on *Adair,* the Court finds that plaintiff's state law claims should be dismissed without prejudice. *See also Gatlin v. Green,* 362 F.3d 1089, 1095 (8th Cir. 2004)(in dismissing federal claims, district court properly exercised its discretion to decline to accept supplemental jurisdiction over the pendent state claims).

**Conclusion**

IT IS THEREFORE ORDERED that defendants's motion for summary judgment [docket entry 43] is granted. Plaintiffs' federal claims are dismissed with prejudice. Plaintiffs' state law claims are dismissed without prejudice.

SO ORDERED this 1st day of July 2005.

/s/Susan Webber Wright
CHIEF JUDGE
UNITED STATES DISTRICT COURT